UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| DANIEL ORLOMOSKI, | ) | Case No.: 2:10-cv-01250-GMN-LRL |
| Plaintiff, | ) ) | **AMENDED ORDER** |
| vs. | ) | |
| DWIGHT W. NEVEN, *et al.*, | ) ) | This **AMENDS** ECF 13, filed on 08/16/2011, as follows: On page 3, line 1, **at** Fed. R. Civ. P. 56**, "(c)(2) n.[1]"** has been deleted. |
| Defendant. | ) ) | |

## INTRODUCTION

Before the Court is Defendants Richard Liverani and Dwight Neven's Motion for Summary Judgment (ECF No. 10). Plaintiff Daniel Orlomoski did not file a response.

## FACTS AND BACKGROUND

Plaintiff filed the instant prisoner civil rights case arising out of an incident that occurred at High Desert State Prison ("HDSP") on November 18, 2009. After a fight occurred in culinary, Plaintiff was placed in confinement, allegedly before he had been found guilty of any charges. Plaintiff alleges that Liverani and Neven denied him due process at his disciplinary hearing because they did not allow him to confront his accuser, call witnesses or access counsel (law library assistant per Administrative Regulation 707). Plaintiff's original complaint alleged violations of his Fifth and Sixth Amendment rights. These claims were dismissed. (ECF No. 5.) Plaintiff's amended complaint alleges violations of his Fourteenth Amendment due process and equal protection rights. After Plaintiff filed his Amended Complaint this Court dismissed Plaintiff's Fourteenth Amendment equal protection claims. (ECF No. 8.) Shortly thereafter Defendants filed the instant Motion for Summary Judgment.

# DISCUSSION

### A.    Failure to Respond

Plaintiff failed to file a response to Defendants' Motion for Summary Judgment. On February 28, 2010, a notice that the Minute Orders regarding the requirements of *Klingele v. Eikenberry* and *Rand v. Rowland* was undeliverable and did not get sent to Plaintiff was filed. (ECF No. 12.)  Therefore there is a question regarding whether Plaintiff actually received the Motion for Summary Judgment.

Plaintiffs, however, are responsible for keeping their contact information up-to-date in pending cases. *In re Hammer*, 940 F.2d 524, 526 (9th Cir.1991) (upholding denial of motion to set aside default judgment where plaintiff failed to update address and knew or should have known of proceedings).  Additionally, Local Special Rule 2–2 requires that plaintiffs immediately file with the court written notification of any change of address.  Failure to do so may result in dismissal of the action with prejudice.

Local Rule 7-2(d) provides that the "failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." However, "[a] motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule." *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).  Accordingly, the Court will consider the merits of the motion for summary judgment.

### B.    Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the

/ / /

/ / /

movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual

data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**C.  Fourteenth Amendment Right to Due Process**

The Due Process Clause of the Fourteenth Amendment provides that the State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed . . . ." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security or correctional goals; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See id.* at 563-70; *see also Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003); *Neal v. Shimoda*, 131 F.3d 818, 830-31 (9th Cir. 1997); *Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *McFarland v. Cassady*, 779 F.2d 1426, 1428 (9th Cir. 1986), *abrogated in part on other grounds by Sandin*,

515 U.S. 472. Plaintiff does not allege any facts that he was not given proper notice of the disciplinary hearing, however he does contend that the only evidence that was provided was untrustworthy. Plaintiff alleges that he was not allowed to confront his accuser and call witnesses and was not given legal assistance.

### 1. Evidence

Plaintiff alleges that the only evidence that was provided at the disciplinary hearing was untrustworthy. While due process requires some evidentiary basis for a disciplinary decision, it does not impose significant new burdens on proceedings within the prison. *Superintendent, Mass. Corr. Inst., Walpole*, 472 U.S. at 455. It does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence, as Plaintiff would have the court do. *Id.* As long as there is any evidence in the record that could support the conclusion reached by the disciplinary board, then due process is satisfied. *Id.*

Defendants provide evidence in the form of reports from correctional officers. (*See* Investigative Report, Ex. B, ECF No. 10-1.) These reports all indicate that Plaintiff had blood on his jump suit and that his jump suit was also soaked in bleach as if to clean off the blood stains. Correctional Officer Vasquez found abrasions on his hand consistent with a fight. This evidence is sufficient to support the disciplinary board's finding that Plaintiff was involved in a fight and should be disciplined accordingly.

### 2. Right to Confront Accuser and Call Witnesses

Plaintiff next alleges that his due process rights were violated because he was not allowed to confront his accuser at the disciplinary hearing. The United States Supreme Court has plainly held that inmates do not have an absolute right to confront their accusers during disciplinary hearings. *Wolff*, 418 U.S. at 567. ("If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls."). This is

consistent with the discretion given to prison administrators to institute policies and procedures aimed toward maintaining the safety and security of the institution.  Therefore this point of error fails as a matter of law.

Plaintiff also argues that he was not allowed to call witnesses at his hearing.  Plaintiff identified correctional officers Richard Martin and Donald Davis as witnesses on his behalf.  Defendant Liverani rejected the witnesses as "redundant." (*See* Disciplinary Form III, Ex. D, ECF No. 10-1.).  Pursuant to Administrative Regulation (AR) 707(2)(B)(3)(e)(7), inmates have only a "qualified" opportunity to call witnesses on their behalf, and it is within the hearing officer's discretion to "deny any witness if the Officer feels that the testimony would be irrelevant, redundant, hazardous to the security of the institution/facility, or would in any way endanger the safety of any individual, including the witness." (AR 707, Ex. F, ECF No. 10-2.)  The United States Supreme Court has guided that it is appropriate to afford prison officials the discretion to refuse to call witnesses if allowing the witnesses would compromise institutional safety or correctional goals.  *Wolff*, 418 U.S. at 565.  The Supreme Court further directed that prison officials should have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that would undermine authority, such as irrelevant or lack of necessity of the testimony. *Id.*   Defendants provide evidence that Liverani denied Plaintiff's request for witnesses because they were not present during the fight and did not possess relevant first-hand knowledge of Plaintiff's participation in the fight.  (*See* Liverani Affidavit, Ex. G, ECF No. 10-4.)  There is no due process violation resulting from the failure to call witnesses who could not provide any new relevant information.  *See Baxter v. Palmigiano*, 425 U.S. 308, 321, 96 S.Ct. 1551 (1976); *see also Bostic v. Carlson*, 884 F.2d 1267, 1271–72 (9th Cir.1989).  Therefore Defendants are entitled to summary judgment on this claim.

/ / /

### 3. Right to Counsel

Plaintiff alleges that he was not permitted to consult with a law library assistant prior to the hearing and was not equipped with substituted counsel during the hearing. Under the Supreme Court decision in *Wolff*, an inmate is only entitled to legal assistance where the charges are complex or the inmate is illiterate. *Wolff* 418 U.S. at 570. AR 707(2)(B)(3)(e)(3) permits inmates to consult with a law library assistant prior to the disciplinary hearing as long as an inmate has been assigned to act as a law library assistant. (*See* AR 707 Ex. F, ECF No. 10-2.) Plaintiff has not provided any evidence that he requested a pre-hearing consultation. Pursuant to AR 707(2)(B)(3)(e)(3), inmates are not entitled to the assistance of prison staff during a disciplinary hearing unless the inmate suffers from an impaired mental or emotional state such that the inmate is incapable of understanding or supporting their own defense. (*See Id.*) This is consistent with the Supreme Court's decision in *Wolff*. Plaintiff has not alleged that he suffers from an impaired mental or emotional state. Accordingly, Plaintiff's point of error that he was not given counsel fails as a matter of law.

### D. Administrative Segregation

Plaintiff claims that his due process rights were violated because he was placed in administrative segregation pending his disciplinary hearing on his assault and battery charges. There is no liberty interest for prison inmates to remain in the general prison population under the Constitution. *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864 (1983) (overruled on other grounds by *Sandin v. Conner*, 15 U.S. 472 (1995)). Since prison officials have broad administrative and discretionary authority over institutions they manage and inmates retain only a narrow range of protected liberty interests, administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration and it does not involve interests independently protected by the Due Process Clause. *Id.*

AR 507(1)(B) authorizes the temporary placement of inmates into administrative segregation pending an investigation into violent misconduct.  (*See* AR 507, Ex. I, ECF No. 10-4).  There is no question that there was a violent altercation in which Plaintiff was alleged to have taken part in.  The prison officials should be allowed the freedom to exercise their administrative authority without judicial oversight so that they can maintain the safety of all involved. *See generally*, *Grayson v. Rison*, 945 F.2d 1064 (9th Cir. 1991).  Because Plaintiff has no right, interest, or entitlement to be housed in the general population he was not deprived of any due process rights.

### E.     Defendant Neven Did Not Participate in Any of the Actions

In order to be held liable under Section 1983, a person acting under color of law must have personally participated in the deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  In a Section 1983 action, supervisors cannot be held accountable for the conduct of their subordinates under a respondeat superior theory; supervisors must have participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Id.*  Plaintiff has alleged no facts that show that Defendant Neven was personally involved in any of the events that form the basis of Plaintiff's claims.  Defendants argue that he has no role in the investigation, drafting of the notice of charges or the disciplinary hearing.  Defendant Neven's only involvement was limited to his response to Plaintiff's internal grievance on the first, informal level. (*See* Inmate Issue History, Ex. E, ECF No. 10-1.)  None of Plaintiff's claims stem from the grievance process.  Accordingly, Defendant Neven is entitled to summary judgment.

### F.     Qualified Immunity

In addition to the reasons stated above as to why summary judgment is proper, the Court also finds that Defendants are entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials from civil liability when performing discretionary

functions as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Analyzing whether a government official is entitled to qualified immunity involves two questions: (1) whether the facts alleged show the official violated a constitutional right; and (2) whether the right was clearly established such that a reasonable government official would know the conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)).

The term "clearly established" means that "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The key inquiry is whether the unlawfulness of the act would have been apparent to a reasonable person in the light of pre-existing law at the time the act was committed. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

### 1. Disciplinary Hearing Claims

As seen from the analysis above there is much case law from the U.S. Supreme Court and Ninth Circuit that show that an inmate does not have an unqualified right to confront his accusers, call witnesses and receive substitute counsel. The law does not support a finding that such rights are clearly established. Therefore the Court finds that Defendants are entitled to qualified immunity on any claims arising from the disciplinary hearing.

### 2. Administrative Segregation Claim

The Court has cited to U.S. Supreme Court case law that holds that Plaintiff does not have a right to be free from administrative segregation prior to an administrative hearing. Thus, it would not be apparent to a reasonable prison official that it would be unconstitutional to place an inmate in administrative segregation in light of the U.S. Supreme Court guidance. Accordingly, Defendants are entitled to qualified immunity on any claims arising from his

administrative segregation.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendants Richard Liverani and Dwight Neven's Motion for Summary Judgment (ECF No. 10) is **GRANTED**.

**DATED** this 1st day of February, 2012.

**NUNC PRO TUNC DATE:**   August 16, 2011.

_____
Gloria M. Navarro
United States District Judge